```
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA
```

**JONATHAN M. GIBSON**                              **CIVIL ACTION**

**VERSUS**                                          **NO. 15-662**

**OCEAN SHIPHOLDINGS, INC.**                        **SECTION "B"(5)**

### ORDER AND REASONS

I. **NATURE OF THE MOTION AND RELIEF SOUGHT**

Before the Court is a Motion for Summary Judgment filed by Defendants Ocean Ships, Inc. (hereinafter "OSI") and the United States of America (hereinafter "United States") (Rec. Doc. No. 34), which was set for submission on October 14, 2015. Defendants contend that all claims against OSI should be dismissed as OSI is not a proper party defendant and that all claims against the United States should be dismissed for improper venue. Plaintiff, Jonathan Gibson, filed an opposition (Rec. Doc. No. 40) and the Defendants filed a Reply Memorandum (Rec. Doc. No. 46).

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

II. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of an injury suffered by Plaintiff while employed on the USNS Watkins (hereinafter "Watkins"), a ship owned by the United States, Department of Defense, Military Sealift Command (hereinafter "MSC") and operated by OSI as a

1

member of the MSC's fleet. (Rec. Doc. Nos. 34-2 at 1; 40-3 at 1). At all pertinent times, Plaintiff was employed by OSI. (Rec. Doc. Nos. 34-2 at 1; 40-3 at 1). Plaintiff alleges violations of the Jones Act, 46 U.S.C. App. §688, the Public Vessels Act ("PVA"), 46 U.S.C §31101, *et seq*, and, in the alternative, the Suits in Admiralty Act ("SAA"), 46 U.S.C. §30901, *et seq*. (Rec. Doc. Nos. 1 at 1; 20 at 2).

Plaintiff served on the Watkins as a chief steward and was allegedly preparing meals for the ship's crew when injured on or about April 28, 2013. (Rec. Doc. No. 1 at 2). According to Plaintiff, steam coils in the galley had been leaking for several weeks despite repeated requests for them to be repaired. (Rec. Doc. No. 1 at 2). He contends that the steward department could not "eliminate the water and constant moisture on deck." (Rec. Doc. No. 1 at 2). While performing his duties, Plaintiff allegedly slipped due to the dampness of the floor, causing his knee to give way. (Rec. Doc. No. 1 at 2). The fall resulted in injuries to his leg, knee, and spine. (Rec. Doc. No. 1 at 2). Plaintiff alleges that the injuries led to a total knee replacement and persistent back pain, which have prevented him from returning to sea. (Rec. Doc. No. 1 at 2).

Plaintiff's original complaint alleged that Ocean Shipholdings, Inc.'s negligence and the unseaworthiness of the Watkins were the proximate causes of his accident in violation

2

of the Jones Act. (Rec. Doc. No. 1 at 1-2). However, this Court permitted Plaintiff to amend his complaint to substitute Ocean Ships, Inc. for the improperly-named defendant, Ocean Shipholdings, Inc., and to add the United States as a defendant. (Rec. Doc. No. 19). In Plaintiff's amended complaint, he re-alleged his Jones Act claims against OSI and added new claims under the PVA and the SAA against the United States. (Rec. Doc. No. 20 at 2). Plaintiff seeks $7,000,000 in compensatory damages for past and future medical expenses, past and future mental and physical pain and suffering, past and future lost wages, loss of enjoyment of life, and, importantly, maintenance and cure. (Rec. Doc. No. 20 at 3).

### III. THE PARTIES' CONTENTIONS

In the Motion for Summary Judgment, Defendants seek dismissal of all claims on the grounds that: (1) OSI is not a proper party defendant, because Plaintiff's exclusive remedy is against the United States; and (2) Plaintiff's suit can only be brought against the United States in the district where Plaintiff resides, which is allegedly the Southern District of Alabama. (Rec. Doc. No. 34-1 at 3).

In response, Plaintiff relies on two 1980s district court opinions, one from this Court and another from the Middle District of Florida, to support his claim that OSI should not be dismissed due to the presence of a maintenance and cure claim.

(Rec. Doc. No. 40 at 2-5). While seemingly conceding that the PVA's exclusivity provision bars all other claims against OSI, Plaintiff requests that this Court refuse to dismiss OSI in order to allow adjudication of his maintenance and cure claim. (Rec. Doc. No. 40 at 4-5). Plaintiff contends that there is no adequate remedy against the United States for his maintenance and cure claims, and thus dismissal under the exclusivity provision of the PVA would be improper. (Rec. Doc. No. 40 at 2-7). Regarding the venue issue, Plaintiff fails to present any argument as to why venue is proper in the Eastern District of Louisiana over his claims against the United States. (Rec. Doc. No. 40 at 6). Instead, Plaintiff focuses on venue issues relating to OSI, which are not at issue, and only makes a conclusory statement that "[i]f this Court finds venue in the Eastern District of Louisiana is not appropriate, then alternatively Plaintiff requests that the case be transferred and not dismissed." (Rec. Doc. No. 40 at 6). Other than generally stating that it would be in the interest of justice, Plaintiff provides no grounds as to why transfer rather than dismissal is the proper remedy if venue in this district is inappropriate. (Rec. Doc. No. 40 at 7).

## IV.  LAW AND ANLAYSIS

Under Federal Rule of Civil Procedure 56, "summary judgment is proper 'if the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Accordingly, the primary issues are whether,

based on the uncontested facts, Plaintiff can maintain his suit against OSI at all, and whether Plaintiff can maintain his suit against the United States in this district.

### a. Application of the PVA and the SAA

Plaintiff filed suit against his private employer, OSI, and the United States. Typically, when a seaman is injured due to the alleged negligence of a private employer, the Jones Act and general maritime law provide remedies. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990). However, when the United States owns the vessel and it is a non-merchant vessel—a public vessel— the PVA also applies. The PVA waives the sovereign immunity of the United States for "damages caused by a public vessel of the United States" 46 U.S.C. §31102. In this case, it is undisputed that the Watkins is a public vessel owned by the United States and operated as part of the Military Sealift Command. (Rec. Doc. Nos. 34-2 at 1; 40-3 at 1). *See also River and Offshore Services Co., Inc., v. United States*, 651 F. Supp. 276, 277 (E.D.La. 1987) (finding that a ship owned by the United States but operated by a private company for service in the Military Sealift Command is a public vessel subject to the PVA). Accordingly, the PVA subjects the United States to suit for the injuries suffered by Gibson on the Watkins.

However, the PVA also incorporates the provisions of the SAA, 46 U.S.C. §30901, *et seq*, except where inconsistent. 46

U.S.C. §31103; *Walls Industries, Inc. v. United States*, 958 F.2d 69, 70 (5th Cir. 1992). Section 30904 of the SAA provides that [i]f a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United Stations . . . whose act or omission gave rise to the claim." 46 U.S.C. §30904. It is uncontested that OSI was Gibson's employer, and thus it was OSI's alleged omission that gives rise to the claim. (Rec. Doc. Nos. 34-2 at 1; 40-3 at 1). Therefore, the applicability of the exclusivity provision turns on whether OSI qualifies as an agent of the United States and whether the claims against both defendants arise out of the same subject matter.

    1. *Whether OSI Qualifies as an Agent of the United States*

In terms of the agency prong, Plaintiff's Memorandum in Opposition does not clearly indicate whether Plaintiff contests the agency issue. Plaintiff states that he "wholeheartedly disagrees" with Defendant's position that Plaintiff's exclusive remedy is against the United States under the SSA and PVA due to the fact that OSI "was merely acting as an agent of the United States." (Rec. Doc. No. 40 at 2). This would seem to indicate that Plaintiff contests the agency issue, but he goes on to cite case law that indicates the converse. Plaintiff's primary argument for retaining OSI in this litigation is that OSI is a

proper party pursuant to the holdings in *Shields v. United States*, 662 F. Supp. 187 (M.D. Fla. 1987), and *Henderson v. International Marine Carriers*, 1990 A.M.C. 400 (E.D. La. 1989). Yet, both cases found that the contract operator *was* an agent of the United States, concluding that the PVA and SAA did not bar suit against the contract operator/agent for other reasons. Even if Plaintiff does contest agency, established law indicates that OSI qualifies as an agent of the United States.

The relevant jurisprudence provides overwhelming support for the proposition that a contract operator of a public vessel is, by definition, an agent for the purposes of the exclusivity provision. *See, e.g., River and Offshore Services Co., Inc. v. United States*, 651 F. Supp. 276, 278 (E.D. La. 1987) ("A long line of cases establishes that a contract operator of a naval vessel such as MTL is an agent of the United States for purposes of SAA §745."); *Saffrhan v. Buck Steber, Inc.*, 433 F. Supp. 129, 133 (E.D. La. 1977) (noting that "when a public vessel is operated by a private corporation under contract with the United States, the private operator becomes the agent of the United States."). Moreover, the United States Court of Appeals for the Fifth Circuit decided a very similar case, finding that the operator, acting subject to the government's overall control through the MSC, was an agent of the United States. *Favorite v. Marine Personnel and Provisioning, Inc.*, 955 F.2d 382, 388 (5th

Cir. 1992). Furthermore, Plaintiff has pointed to no evidence that rebuts Defendant's evidence of an agency relationship.

However, one opinion from this Court required a more thorough inquiry into the parties' contractual obligations to determine whether the United States had any degree of operational control. *Levene v. United States*, No. CIV. A. 02-0242, 2002 WL 1468018, at *2 (E.D. La. July 8, 2002). Such an examination is unnecessary here, though, as it is undisputed that the ship was a part of the fleet of the MSC and thus subject to extensive governmental control. Accordingly, the agency prong is met.

*2. Whether All Claims Arise Out of the Same Subject Matter*

In Plaintiff's amended complaint, he re-alleges all original allegations, causation, and damages against the United States and OSI. (Rec. Doc. No. 20 at 1-2). As Plaintiff makes the same allegations against both parties, both claims seemingly arise out of the same subject matter. Yet, Plaintiff's primary argument for retaining OSI in this suit rests on the allegedly unrelated subject matter of certain aspects of his claims for which the SAA/PVA provide no remedy. (Rec. Doc. No. 40 at 2-4). More specifically, Plaintiff points to the opinions in *Shields* and *Henderson* for the proposition that a Plaintiff may still bring suit against an agent of the United States, despite the applicability of the SAA's exclusivity provision, when a

9

Plaintiff alleges arbitrary and willful denial of maintenance and cure. *See generally Shields v. United States*, 662 F. Supp. 187 (M.D. Fla. 1987); *Henderson v. International Marine Carriers*, 1990 A.M.C. 400 (E.D. La. 1989). Whether such an argument holds water has been disputed.

*Shields* first articulated the maintenance and cure exception to the SAA's exclusivity provision, finding that "arbitrary claims handling is an entirely different subject matter from the negligent conduct for which the SAA provides a remedy" and "that the SAA was not designed to preclude recovery for arbitrary claims handling." *Shields*, 662 F. Supp. 187, 190 (M.D Fla. 1987). However, the United States Court of Appeals for the Eleventh Circuit ultimately rejected the holding in *Shields*, concluding that the SAA's exclusivity provision precludes any action for maintenance and cure against the contract operator and imposes liability solely on the United States. *Kasprik v. United States*, 87 F.3d 462, 465-66 (11th Cir. 1996). After acknowledging the reasonableness of the conclusion in *Shields*, the court ultimately reached its holding by determining that the willful denial of maintenance and cure arose out of the same subject matter as the seaman's entitlement to the maintenance and cure, which arose from the initial injury.[1] *Id*. at 466.

---

[1] At the time of the decision, the SAA exclusivity provision used the language "by reason of the same subject matter" rather than the "arising out of the same subject matter" language adopted in 2006. Yet, courts have interpreted

10

While the Fifth Circuit has yet to speak on this issue, a number of district court opinions in this Circuit have addressed it. In March of 1989, in an opinion by Judge Duplantier, this Court expressly rejected *Shields*:

> We are not persuaded by the analysis of the *Shields* court. While Plaintiff's maintenance and cure claims may not arise out of the same act or omission as his claims for negligence and unseaworthiness, they certainly are 'by reason of the same subject matter.' We decline to give the PVA's exclusivity provision the limited construction adopted by the *Shields* court.

*Farnsworth v. Sea-Land Service, Inc.*, civ. A. No. 87-5954, 1989 WK 20544, at *5 (E.D. La. March 7, 1989). However, later that same year, this Court took a different route in an opinion by Judge Feldman, which followed the path laid out in *Shields* to hold that claims for willful and arbitrary failure to pay maintenance and cure fall outside of the SAA's exclusivity provision. *Henderson*, 1990 A.M.C. at 400. The Fifth Circuit affirmed both decisions without opinion.

Two more recent cases out of this Circuit have chosen to follow *Farnsworth*. In both *Stiward v. United States*, No. Civ. A. 05-1926, 2005 WL 3543736, at *4-6 (E.D. La. Oct. 13, 2005), and *Pinckney v. Am. Overseas Marine Corp., LLC*, No. 2:15-CV-30, 2015 WL 5123406, at *2-3 (S.D. Tex. Aug. 31, 2015), the courts found

---

the provision consistently despite the change. *See Pinckney v. American Overseas Marine Corp., LLC,* No. 2:15-CV-30, 2015 WL 5123406, at *2 (S.D. Tex. Aug. 31, 2015); *Reece v. Keystone Shipping Co.*, No. C09-1610JLR, 2010 WL 2331068, at *3 (W.D. Wash. Mar. 25, 2010).

that all maintenance and cure claims against the contract operator were barred by the SAA's exclusivity provision. Both relied heavily on three circuit court opinions that rejected the *Shields* approach: *Kasprik,* 87 F.3d at 465-66, *O'Connell v. Interocean Management Corp.*, 90 F.3d 82, 85 (3d Cir. 1996); and *Manuel v. Int'l Carriers*, 50 F.3d 1252, 1260 (4th Cir. 1995). Additionally, *Pinckney* cites related Fifth Circuit and Supreme Court opinions that find punitive damages to be "part-and-parcel" of a claim for compensatory damages rather than a separate subject matter. *Pinckney*, 2015 WL 5123406 at *3 (citing *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995) and *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009)). These cases prove most persuasive.

The weight of the existing circuit court opinions addressing this issue, in addition to the *Guevara* court's declaration regarding the relationship between punitive and compensatory damages, indicate that the Fifth Circuit would likely deem all maintenance and cure claims within the scope of the SAA's exclusivity provision. Accordingly, all claims against OSI are dismissed as the PVA/SAA exclusivity provision does not permit Plaintiff to retain his claims against OSI.

    **b. Proper Venue under the PVA**

While Plaintiff is permitted to maintain his action against the United States, the PVA and SAA both contain specific venue

provisions that limit where Plaintiff may pursue his claims. 46 U.S.C. §31104; 46 U.S.C. §30906. According to Plaintiff's amended complaint, he asserts his claims against the United States primarily under the PVA. (Rec. Doc. No. 20 at 2). Only in the alternative does he seek relief under the SAA. (Rec. Doc. No. 20 at 2). Thus, the venue provisions of the PVA apply.[2] Under the PVA, venue is proper "in the district in which the vessel or cargo is found within the United States." 46 U.S.C. §31104(a). "The district where the vessel is found is the district in which the vessel is physically located at the time the complaint is filed." *Wade v. Bordelon Marine, Inc.*, 770 F. Supp. 2d 822, 826 (E.D. La. 2011) (citing *Sherman v. United States*, 246 F. Supp. 547, 548 (D. Mich. 1965)). However, "[i]f the vessel or cargo is outside of the territorial waters of the United States[, then] the action shall be brought in the district court . . . for any district in which any plaintiff resides or has as an office for the transaction of business." 46 U.S.C. §31104(b)(1).

    In this case, it is undisputed that the Watkins was not in the United States when the Plaintiff filed suit. Rather, at all relevant times, the ship was located in Diego Garcia, the site of a U.S. Naval base in the Indian Ocean. (Rec. Doc. Nos. 34-2

---

[2] Even if the complaint were construed to seek relief under both Acts simultaneously, the Supreme Court has held that claims within the scope of the PVA remain subject to its terms even if the SAA applies as well. *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 181 (1976). And, as discussed above, the PVA only incorporates the SAA to the extent they do not conflict.

13

at 1; 40-3 at 1). Thus, because the Watkins was not within the territorial waters of the United States, venue is only proper in districts where Gibson resides or has a business office.

The facts do not indicate that Gibson has any sort of a business office. In fact, the complaint indicates that he is too injured to work; hence, it is highly unlikely he has any sort of office. Therefore, venue is proper under the PVA only in his home district. Plaintiff's complaint only states that he is a domiciliary of Alabama. (Rec. Doc. No. 1 at 1). It does not reveal exactly where he resides. Nevertheless, Defendants' Motion for Summary Judgment contends that Plaintiff resides in or around Mobile, Alabama. (Rec. Doc. No. 34-1 at 9). Plaintiff's opposition does not refute this,[3] and thus, if true, venue would be proper only in the Southern District of Alabama.

As venue is improper in the Eastern District of Louisiana, this Court must choose between transferring the case to a court of proper venue or dismissing it outright. According to 28 U.S.C. §1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As Judge Fallon pointed out in *Wade v. Bordelon*

---

[3] Plaintiff's opposition simply asks that if the Court finds venue here improper, that it transfer rather than dismiss the case. However, Plaintiff does not specify where, perhaps indicating that Defendant correctly asserted that Plaintiff's home district is the Southern District of Alabama.

14

*Marine*, when potential statute of limitations issues may arise due to dismissal, it is in the interest of justice to transfer rather than dismiss the case. *Wade*, 770 F. Supp. 2d at 828, n.4 (noting that, because the accident occurred over two years ago, it is best for the Court to transfer the case rather than dismiss it and "inject a statute of limitations issue" into the case). As the SAA/PVA statute of limitations is only two years, 46 U.S.C. §30905, and this accident allegedly occurred on April 28, 2013, it is recommended that the case be transferred to the Southern District of Alabama in the interest of justice.

V. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Motion is **GRANTED.** OSI is dismissed as party from this litigation due to the PVA/SAA exclusivity provision, and all remaining claims against the United States are transferred to the Southern District of Alabama pursuant to the PVA venue rules.

New Orleans, Louisiana, this 29th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE